IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: TFT-LCD (FLAT PANEL) ANTITRUST LITIGATION | No. M 07-1827 SI |
| / | MDL No. 1827 |
| This Order Relates To: | No. CR 09-0110 SI |
| UNITED STATES OF AMERICA, | **ORDER DENYING DEFENDANTS' MOTION TO DISMISS THE INDICTMENT** |
| Plaintiff, | |
| v. | |
| AU OPTRONICS CORPORATION, *et al.*, | |
| Defendants. / | |

On April 8, 2011, the Court held a hearing on defendants' motion to dismiss the indictment. For the reasons set forth below, the motion is DENIED.

**BACKGROUND**

The superseding indictment filed on June 10, 2010 charges AU Optronics Corporation ("AU Optronics"), AU Optronics Corporation America ("AU Optronics America"), and nine Taiwanese individuals with entering into and engaging in a price-fixing conspiracy in violation of Section 1 of the Sherman Act. Six of the individuals charged were, during the period covered by the indictment, employees of AU Optronics. Those defendants are Hsuan Bin Chen (President), Hui Hsuing (Executive Vice President), Lai-Juh Chen (Director of Desktop (Monitor) Display Business Group), Shui Lung Leung (Senior Manager of Desktop (Monitor) Display Business Group), Borlong Bai (Senior Manager of Notebook Display Business Group and Director of the Notebook Display Business Group), and Tsannrong Lee (Senior Manager of IT Display, Senior Manager of Desktop Display, Director of

Desktop Display, and Director of Notebook Display Business Groups) (collectively the "AUO defendants").

The superseding indictment alleges that "[f]rom on or about September 14, 2001, until on or about December 1, 2006 ('the period covered by this Indictment'), . . . the defendants and other coconspirators entered into and engaged in a combination and conspiracy to suppress and eliminate competition by fixing the prices of thin-film transistor liquid crystal display panels ('TFT-LCD') in the United States and elsewhere." (Superseding Indictment ¶ 2.) According to the superseding indictment, "[t]he charged combination and conspiracy consisted of a continuing agreement, understanding and concert of action among the defendants and other coconspirators, the substantial terms of which were to agree to fix the prices of TFT-LCDs for use in notebook computers, desktop computer monitors, and televisions in the United States and elsewhere." (*Id.* ¶ 3.)

The superseding indictment alleges that on or about September 14, 2001, representatives from four Taiwan TFT-LCD manufacturers, including AU Optronics, "secretly met in a hotel room in Taipei, Taiwan and entered into and engaged in a conspiracy to fix the price of TFT-LCD." (*Id.* ¶ 17(a).) The superseding indictment alleges that the conspirators agreed to meet approximately once a month for the purpose of fixing the price of TFT-LCD panels, and that these meetings were commonly referred to by some of the conspirators as "Crystal Meetings." (*Id.*) According to the superseding indictment, at the September 14, 2001 meeting, a representative from AU Optronics stated that the participants at future "Crystal Meetings" should include the two major Korean TFT-LCD manufacturers to ensure the success of the conspiracy. (*Id.*) The superseding indictment alleges that employees from AU Optronics attended Crystal Meetings on a regular basis between on or about September 14, 2001 until on or about December 1, 2006 with employees of other participating TFT-LCD manufacturers. (*Id.* ¶ 17(c).) The superseding indictment alleges that all of the individual AUO defendants except Lai-Juh Chen attended and participated in one or more of the Crystal Meetings, and that all of the AUO defendants at times authorized, ordered or consented to the attendance and participation of their subordinate employees at Crystal Meetings. (*Id.* ¶ 17(d).)

The superseding indictment alleges that "[t]he participants in the conspiracy issued price quotations in accordance with the price agreements and accepted payment for the supply of TFT-LCDs

sold at collusive, noncompetitive prices to customers in the United States and elsewhere." (*Id*. ¶ 17(f).) According to the superseding indictment, employees of AU Optronics had one-on-one discussions in person or by telephone with representatives of coconspirator TFT-LCD manufacturers during which they reached agreements on the pricing of TFT-LCD products sold to certain customers, including customers located in the United States. (*Id*. ¶ 17(j).) The superseding indictment alleges that the AUO defendants participated in these one-on-one discussions. (*Id*.) The indictment also alleges that

> During the period covered by this Indictment, senior level employees of AU OPTRONICS CORPORATION regularly instructed employees of AU OPTRONICS CORPORATION AMERICA located in the United States to contact employees of other TFT-LCD manufacturers located in the United States to discuss pricing to major United States TFT-LCD customers.  In response to these instructions, employees of AU OPTRONICS CORPORATION AMERICA located in the United States had regular contact through in-person meetings and phone calls with employees of other TFT-LCD manufacturers in the United States to discuss and confirm pricing, and at times agree on pricing, to certain TFT-LCD customers located in the United States.  These AU Optronics Corporation America employees regularly reported the pricing information they received from their competitor contacts in the United States to senior-level executives at AU Optronics Corporation in Taiwan.  By at least early 2003, representatives of defendant AU Optronics Corporation also began sending reports of the discussions and price agreements reached at Crystal Meetings to certain employees at AU Optronics Corporation America.  These reports were used by certain employees of AU Optronics Corporation America in their price negotiations with certain TFT-LCD customers located in the United States.

(*Id*. ¶ 17(k).)

Defendants Au Optronics and Au Optronics America, joined by individual defendants Hsuan Bin Chen, Hui Hsiung, Lai-Juh Chen, Shiu Lung Leung and Tsannrong Lee (the "Moving Defendants"), move to dismiss the indictment on the following grounds: (1) the indictment fails to allege that defendants' conduct was undertaken with the intent to produce a substantial effect in the United States, and (2) the indictment fails to allege the necessary nexus to United States commerce within the meaning of the Foreign Trade Antitrust Improvement Act.

**LEGAL STANDARDS**

Federal Rule of Criminal Procedure 7(c) states that an indictment "must be a plain, concise, and definite written statement of the essential facts constituting the offense charged." "An indictment is sufficient if it (1) 'contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend' and (2) 'enables him to plead an acquittal or conviction in bar of

3

future prosecutions for the same offense.'" *United States v. Lazarenko*, 564 F.3d 1026, 1033 (9th Cir. 2009), *quoting Hamling v. United States*, 418 U.S. 87, 117 (1974). "[A]n indictment 'should be read in its entirety, construed according to common sense, and interpreted to include facts which are necessarily implied.'" *United States v. Berger*, 473 F.3d 1080, 1103 (9th Cir. 2007). "An indictment which tracks the words of the statute charging the offense is sufficient so long as the words unambiguously set forth all elements necessary to constitute the offense." *United States v. Fitzgerald*, 882 F.2d 397, 399 (9th Cir. 1989), *quoting United States v. Givens*, 767 F.2d 574, 584 (9th Cir. 1985).

## DISCUSSION

### I. *NIPPON*

The Moving Defendants move to dismiss the indictment on the ground that it fails to allege an adequate jurisdictional basis under *United States v. Nippon Paper Industries Company*, 109 F.3d 1 (1st Cir. 1997). *Nippon* involved an alleged conspiracy in which the defendants held meetings in Japan to fix the price of thermal fax paper sold in North America and, pursuant to those meetings, sold paper to third-party trading houses in Japan. *Nippon*, 109 F.3d at 2. Although the third-party trading houses imported and sold the paper in the United States, all of the defendants' alleged conduct took place in Japan. *Id.* The district court ruled that a criminal antitrust prosecution could not be based on wholly extraterritorial conduct and dismissed the indictment. *Id.* On appeal, the First Circuit reversed the trial court's order and held that "Section One of the Sherman Act applies to wholly foreign conduct which has an intended and substantial effect in the United States." *Id.* at 9.

According to the Moving Defendants, this Court adopted *Nippon* as controlling in its January 29, 2011 order and — because this case involves foreign conduct — the indictment must allege as a "jurisdictional element" that there was an "intended and substantial effect in the United States." (Motion at 9-10.) Unlike *Nippon*, however, the conspiracy alleged in the indictment is not based on "wholly foreign conduct." Among other things, the indictment alleges that defendant AU Optronics regularly instructed employees of its American subsidiary and alleged co-conspirator, AU Optronics America, to contact other TFT-LCD manufacturers to discuss and agree upon pricing for United States customers. (Superseding Indictment ¶ 17(k).) The government also alleges that AU Optronics used

information gained through the Crystal Meetings in Taiwan to further AU Optronics America's domestic price fixing of TFT-LCD panels sold to United States customers. (*Id.*) In other words, the indictment alleges a conspiracy that involved overt acts by various co-conspirators both inside and outside the United States. Accordingly, the concerns raised in *Nippon* regarding criminal Sherman Act violations based on "wholly foreign conduct" simply do not apply.

Even if *Nippon* applies to this case, the superseding indictment contains sufficient allegations to establish an "intended and substantial effect in the United States." The superseding indictment specifically alleges that the purported conspiracy "substantially affected, interstate and foreign trade and commerce," and thus alleges a substantial effect in the United States. (Superseding Indictment ¶ 20.) Moreover, the superseding indictment alleges a conspiracy that "consisted of a continuing agreement, understanding, and concert of action among the defendants and other coconspirators, the substantial terms of which were to agree to fix the prices of TFT-LCDs for use in notebook computers, desktop computer monitors, and televisions in the United States and elsewhere." (*Id.* ¶ 3.) As the Supreme Court has long recognized, "intent to accomplish an object cannot be alleged more clearly than by stating that parties conspired to accomplish it." *Frohwerk v. United States*, 249 U.S. 204, 209 (1919); *see also United States v. Purvis*, 580 F.2d 853, 859 (5th Cir. 1978) (reversing the dismissal of an indictment and holding that "'conspiracy' incorporates willfulness and specific intent"); *United States v. Cinemette Corp. of Am.*, 687 F. Supp. 976, 983 (W.D. Pa. 1988) (holding that an indictment sufficiently alleged intent to violate the Sherman Act where it alleged that "the defendants entered into a conspiracy to eliminate competition for film licenses being offered by distributors for theatres in the Altoona area"). The factual allegations in the superseding indictment are sufficient to establish both an intended and substantial effect on commerce in the United States.

The superseding indictment also adequately pleads each of the elements of a criminal violation of the Sherman Act. Section 1 of the Sherman Act prohibits "[e]very contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations." 15 U.S.C. § 1. In order to establish a criminal violation of Section 1, the government must plead and prove three elements: "First, that the conspiracy charged existed at or about the time stated in the indictment; second, that the defendant knowingly — that is, voluntarily and intentionally

— became a member of the conspiracy charged in the indictment, knowing of its goal and intending to help accomplish it; third, that interstate commerce was involved." *United States v. Alston*, 974 F.2d 1206, 1210 (9th Cir. 1992). To plead the interstate commerce element, the indictment must allege either that "the offending activities took place in the flow of interstate commerce" or that "the defendants' general business activities had or were likely to have a substantial effect on interstate commerce." *United States v. Giordano*, 261 F.3d 1134, 1138 (11th Cir. 2001); *see also United States v. ORS, Inc.*, 997 F.2d 628, 630 (9th Cir. 1993).

As above, the superseding indictment alleges a conspiracy that "consisted of a continuing agreement, understanding, and concert of action among the defendants and other coconspirators, the substantial terms of which were to agree to fix the prices of TFT-LCDs for use in notebook computers, desktop computer monitors, and televisions in the United States and elsewhere." (Superseding Indictment ¶ 3.) The superseding indictment alleges that the conspiracy existed from September 14, 2001 until December 1, 2006 and that each of the AUO defendants either attended or sent subordinate employees to attend conspiratorial meetings to set the price of TFT-LCD panels. (*Id.* ¶¶ 17(a)-(h).) With regard to the interstate commerce element, the superseding indictment alleges that "the defendants and their coconspirators sold and distributed substantial quantities of TFT-LCDs in a continuous and uninterrupted flow of interstate and foreign trade and commerce to customers located in states or countries other than the states or countries in which the defendants and their coconspirators produced TFT-LCDs." (*Id.* ¶ 19.) The indictment also alleges that "payments for TFT-LCDs traveled in interstate and foreign trade and commerce." (*Id.*) Finally, the superseding indictment alleges that defendants accepted payment for TFT-LCD products "at collusive, noncompetitive prices to customers in the United States and elsewhere." (*Id.* at ¶ 17(f).) These factual allegations are sufficient to establish each of the elements of a criminal violation of Section 1 of the Sherman Act. Accordingly, the Moving Defendants' motion to dismiss the indictment based on *Nippon* is DENIED.

## II. Foreign Trade Antitrust Improvement Act

The Moving Defendants also argue that the superseding indictment fails to allege facts sufficient to meet the requirements of the Foreign Trade Antitrust Improvements Act, 15 U.S.C. § 6a ("FTAIA"),

which amends the Sherman Act and "excludes from [its] reach much anti-competitive conduct that causes only foreign injury." *F. Hoffman-LaRoche*, *Ltd. v. Empagran S.A. (Empagran I)*, 542 U.S. 155, 158 (2004). The Moving Defendants argue that the indictment includes conduct that occurred outside the United States, and that the indictment is therefore required to plead facts sufficient to establish an exception to the FTAIA's general exclusionary rule. The government responds that, although the conspiracy involved some foreign anticompetitive conduct, the indictment "alleges that Defendants entered into a conspiracy that violated U.S. law on U.S. soil." (Opposition at 4.)

The FTAIA establishes a general rule that the Sherman Act "shall not apply to conduct involving trade or commerce (other than import trade or import commerce) with foreign nations." 15 U.S.C. § 6a. "The [FTAIA] does not define the term 'import,' but the term generally denotes a product (or perhaps a service) has been brought into the United States from abroad." *Turicentro, S.A. v. American Airlines Inc.*, 303 F.3d 293, 303 (3d Cir. 2002). "The dispositive inquiry is whether the conduct of the defendants, not plaintiffs, involves 'import trade or commerce.'" *Id.*

The parties present the court with no authority regarding the application of the FTAIA to a criminal Sherman Act case. Nonetheless, applying the general principles above, the Court concludes that the FTAIA does not require dismissal of the superseding indictment. The superseding indictment alleges that defendant AU Optronics was a Taiwan corporation with its principal place of business in Taiwan. (Superseding Indictment ¶ 4.) The superseding indictment alleges that defendant AU Optronics, its American subsidiary AU Optronics America and the individual defendants were engaged in the business of manufacturing TFT-LCD products that were sold both inside the United States and abroad. (*Id.* ¶¶ 3, 4-14, 17(f), 17(j), 17(k), 19.) The superseding indictment further alleges that prices of defendants' TFT-LCDs were set pursuant to a broad conspiracy carried out both in Taiwan and in the United States. (*Id.* ¶¶ 17(a)-(k).) Thus, it appears that the criminal charges alleged in the indictment are based at least in part on conduct involving "import trade or import commerce" (specifically, the importation of TFT-LCD products into the United States). By its express terms, the FTAIA's exclusionary rule is inapplicable to such import activity conducted by defendants.

More generally, the Court simply cannot conclude that the FTAIA was intended to bar criminal prosecution where, as here, the alleged conspiracy involves conduct in furtherance of the conspiracy

7

both inside and outside of the United States. As discussed above, the superseding indictment alleges that co-conspirator AU Optronics America was "regularly instructed" by employees of AU Optronics "to contact employees of other TFT-LCD manufacturers in the United States to discuss pricing to major United States TFT-LCD customers." (Superseding Indictment ¶ 17(k).) The superseding indictment also alleges that AU Optronics sent information regarding discussions and price agreements reached at the Crystal Meetings to employees at AU Optronics America for use in domestic price-fixing discussions. (*Id.*) Acts by coconspirators (such as AU Optronics America) may be considered against all other members of the conspiracy, even if such acts were done without the knowledge of other co-conspirators. ABA Section of Antitrust Law, *Model Jury Instructions in Criminal Antitrust Cases*, p. 107 (2009). Moreover, as the government points out, conspiratorial acts that occur outside the United States are generally considered to be within United States jurisdiction if an overt act in furtherance of the conspiracy occurs inside this country. *United States v. Endicott*, 803 F.2d 506, 514 (9th Cir. 1986); *United States v. Angotti*, 105 F.3d 539, 545 (9th Cir. 1997) ("[A] conspiracy charge is appropriate in any district where an overt act committed in the course of the conspiracy occurred. It is not necessary that [the defendant] himself have entered or otherwise committed an overt act within the district, as long as one of his coconspirators did."). Because the superseding indictment clearly alleges a series of overt acts by AU Optronics America within the United States and in furtherance of the conspiracy, the Court finds that the superseding indictment adequately alleges a domestic conspiracy that is not barred by the FTAIA.[1]

///

---

[1] As defendants note, courts have held in the civil context that compensation for foreign injury may be barred to the extent that the plaintiff cannot establish an exception to the FTAIA. (Motion at 11.) This proposition, though potentially relevant to whether the government may seek restitution for injury caused abroad, has no bearing on whether an indictment alleging a combination of domestic and foreign conduct that caused injury to domestic purchasers adequately states a criminal violation of the Sherman Act. Defendants are, of course, not foreclosed from raising such concerns if and when the Court addresses restitution in this matter.

**CONCLUSION**

For the foregoing reasons, the Court DENIES the Moving Defendant's motion to dismiss. (No. C 09-110 SI, Docket No. 258.)

**IT IS SO ORDERED.**

Dated: April 18, 2011

SUSAN ILLSTON
United States District Judge