United States District Court
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 09-cr-0110 SI |
| Plaintiff, | **CORRECTED ORDER DENYING MOTIONS FOR JUDGMENT OF ACQUITTAL AND FOR A NEW TRIAL** |
| v. | |
| AU OPTRONICS CORPORATION, et al., | |
| Defendants. | |

On May 25, 2012, the Court heard argument on Defendants' motions for acquittal or, in the alternative, a new trial. Dkt. Nos. 878 and 879.[1]  Having considered the arguments of counsel and the papers submitted, the Court hereby DENIES Defendants' motions.

**BACKGROUND**

In June 2010, the Antitrust Division of the Department of Justice indicted AU Optronics Corporation ("AUO"), its wholly-owned subsidiary, AU Optronics Corporation of America ("AUOA"), and nine individuals on charges of price-fixing in violation of the Sherman Act, 15 U.S.C. § 1. AUO is a major manufacturer of thin-film transistor liquid crystal display ("TFT-LCD") panels, electronic components that are used in computer monitors, televisions, and other consumer electronics. Superseding Indictment, ¶¶ 3-4. The Superseding Indictment charged that AUO, in concert with other TFT-LCD manufacturers, conspired to fix worldwide prices of TFT-LCD panels.

---

[1] AUO and AUOA filed a joint motion (Dkt. No. 879); Hui Hsiung filed a separate motion (Dkt. No. 878), which raises issues substantially similar to those raised in the joint motion. Hsuan Bin Chen and Shiu Lung Leung joined the Hsiung Motion. *See* Dkt. Nos. 881 and 904. The Court considers these motions together.

On March 13, 2012, following an eight-week trial, a jury returned a verdict convicting Defendants AUO, AUOA, Hsuan Bin Chen, and Hui Hsiung (collectively, "Defendants") for their roles in the charged conspiracy. *See* Special Verdict Form, Dkt. No. 851. The jury further found that the conspirators derived gains of at least $500 million from the conspiracy. *Id.*

## LEGAL STANDARD

**1.     Rule 29**

Rule 29 of the Federal Rules of Criminal Procedure requires the Court, on a defendant's motion, to "enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction." Fed. R. Crim. P. 29(a). "A defendant is not required to move for a judgment of acquittal before the court submits the case to the jury as a prerequisite for making such a motion after jury discharge." *Id.* at 29(c)(3). "If the court enters a judgment of acquittal after a guilty verdict, the court must also conditionally determine whether any motion for a new trial should be granted if the judgment of acquittal is later vacated or reversed. The court must specify the reasons for that determination." *Id.* at 29(d)(1).

The Court's review of the constitutional sufficiency of evidence to support a criminal conviction is governed by *Jackson v. Virginia*, 443 U.S. 307 (1979), which requires a court to determine whether "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* at 319 (emphasis original); *see also McDaniel v. Brown*, --- U.S. ----, 130 S. Ct. 665, 673 (2010) (reaffirming this standard). *Accord United States v. Nevils*, 598 F.3d 1158, 1163–64 (9th Cir. 2010) (en banc). This rule establishes a two-step inquiry:

> First, a . . . court must consider the evidence presented at trial in the light most favorable to the prosecution. . . . [And s]econd, after viewing the evidence in the light most favorable to the prosecution, the . . . court must determine whether this evidence, so viewed, is adequate to allow "any rational trier of fact [to find] the essential elements of the crime beyond a reasonable doubt."

*Nevils*, 598 F.3d at 1164 (quoting *Jackson*, 443 U.S. at 319) (emphasis in *Jackson*, final alteration in *Nevils*).

### 2. Rule 33

"Upon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33(a). The Ninth Circuit described the standard for granting a new trial in *United States. v. A. Lanoy Alston, D.M.D., P.C.*, 974 F.2d 1206 (9th Cir. 1992), which it reaffirmed in *United States v. Kellington*, 217 F.3d 1084 (9th Cir. 2000):

> [A] district court's power to grant a motion for a new trial is much broader than its power to grant a motion for judgment of acquittal. The court is not obliged to view the evidence in the light most favorable to the verdict, and it is free to weigh the evidence and evaluate for itself the credibility of the witnesses. . . . If the court concludes that, despite the abstract sufficiency of the evidence to sustain the verdict, the evidence preponderates sufficiently heavily against the verdict that a serious miscarriage of justice may have occurred, it may set aside the verdict, grant a new trial, and submit the issues for determination by another jury.

*Kellington*, 217 F.3d at 1097 (internal quotation marks and citations omitted).

### DISCUSSION

Defendants give five general reasons why the Court should grant their motions for acquittal, or in the alternative, for a new trial: (1) the government failed to establish venue in the Northern District of California; (2) the government failed to prove both of the required exceptions under the Foreign Trade Antitrust Improvements Act of 1982; (3) the evidence did not support the "gross gains" of $500 million alleged in the Indictment; (4) on statutory and constitutional grounds, the government was required to allege and present its case under the rule of reason rather than as a *per se* violation of the Sherman Act; and (5) the evidence at trial was insufficient to sustain AUOA's conviction.

The Court addresses each issue in turn.

### 1. Venue

Defendants contend that the government failed to establish venue in the Northern District of California.

"Venue, which may be waived, is not an essential fact constituting the offense charged." *United States v. Powell*, 498 F.2d 890, 891 (9th Cir. 1974) (citing *Carbo v. United States*, 314 F.2d 718, 733 (9th Cir. 1963)). Further, the government bears the burden of establishing venue by a preponderance

**United States District Court**
For the Northern District of California

of evidence. *United States v. Pace*, 314 F.3d 344, 349 (9th Cir. 2002) (internal citation omitted). "[D]irect proof of venue is not necessary where circumstantial evidence in the record as a whole supports the inference that the crime was committed in the district where venue was laid." *Id.* (citing *United States v. Childs*, 5 F.3d 1328, 1332 (9th Cir. 1993)); *see also Powell*, 498 F.2d at 891 (concluding that "[a] consideration of the circumstantial evidence . . . supports the conclusion of the trial court that venue was established.").

In conspiracy cases, venue is appropriate in any district where an overt act in furtherance of the conspiracy occurred. *See Hyde v. United States*, 225 U.S. 347, 367 (1912); *United States v. Myers*, 847 F.2d 1408, 1411 (9th Cir. 1988); *United States v. Schoor*, 587 F.2d 1303, 1308 (9th Cir. 1979); *see also* 18 U.S.C. § 3237(a) (permitting prosecution "in any district in which such offense was begun, continued, or completed"). Each defendant need not have entered or otherwise committed an overt act within the district. *Myers*, 847 F.2d at 1411. Rather, since "a conspiracy is a partnership in crime . . . [an] overt act of one partner may be the act of all without any new agreement specifically directed to that act." *United States v. Socony-Vaccum Oil Co.*, 310 U.S. 150, 253-54 (1940) (citation omitted).

Guided by the parties' stipulated jury instructions regarding venue,[2] the jury concluded that the conspiracy, while born abroad, extended into this district. The government presented evidence from which this finding could be made, including the fact that employees of Defendants were located in this District throughout the relevant time period, and that Hewlett-Packard maintained a procurement office

---

[2] The jury was instructed in advance of closing argument: "[b]efore you can find a defendant guilty of committing the crime charged in the indictment, you must find by a preponderance of evidence that, between September 14, 2001, and December 1, 2006, the conspiratorial agreement or some act in furtherance of the conspiracy occurred in the Northern District of California" and that "[t]o prove something by a preponderance is to prove it is more likely true than not true." Final Jury Instructions at 8-9, Dkt. No. 829; Stipulated and Party-Proposed Jury Instructions, Stipulated Instruction at 18, Dkt. No. 807.

Having stipulated to the jury instructions regarding venue, Defendants waived the remainder of their post-conviction arguments. *See United States v. Williams*, 455 F.2d 361, 365 (9th Cir. 1972) (objections to the form of jury instructions waived where no objections made to the instruction as given and no additional instructions requested); *see also Powell*, 498 F.2d at 892 ("A new trial on venue grounds raised after the jury has convicted gives the [defendant] a second bite at the apple to which he is not entitled . . . ."); Fed. R. Crim. P. 30 ("A party who objects to any portion of the instructions or to a failure to give a requested instruction must inform the court of the specific objection and the grounds for the objection before the jury retires to deliberate."). Accordingly, Defendants' argument that the government must prove an act establishing venue within the five-year limitations period must fail; so, too, must Defendants' constructive-amendment and fatal-variance arguments.

4

in this District from 2001 until mid-2002. The Court finds that the evidence considered by the jury was sufficient to support the jury's conclusion. Further, the Court finds no threat of a serious miscarriage of justice based on the venue finding.

## 2. Foreign Trade Antitrust Improvements Act

Section 1 of the Sherman Act outlaws conspiracies "in restraint of trade or commerce among the several States, or with foreign nations." 15 U.S.C. § 1. Section 7 of the Sherman Act, added by the Foreign Trade Antitrust Improvements Act of 1982 ("FTAIA"), provides that Section 1 "shall not apply to conduct involving trade or commerce (other than import trade or commerce) with foreign nations unless such conduct has a direct, substantial, and reasonably foreseeable effect" on commerce within the United States, United States import commerce, or export trade of a United States exporter. *See* 15 U.S.C. § 6a.

The jury was instructed accordingly:

> In order to establish the offense of conspiracy to fix prices charged in the indictment, the government must prove each of the following elements beyond a reasonable doubt:
>
> * * *
>
> Third, that the members of the conspiracy engaged in one or both of the following activities:
>
> (A)  fixing the price of TFT-LCD panels targeted by the participants to be sold in the United States or for delivery to the United States; or
>
> (B)  fixing the price of TFT-LCD panels that were incorporated into finished products such as notebook computers, desktop computer monitors, and televisions, and that this conduct had a direct, substantial, and reasonably foreseeable effect on trade or commerce in those finished products sold in the United States or for delivery in the United States . . .

Final Jury Instructions at 10, Dkt. No. 829.

Defendants argue that acquittal or a new trial is appropriate because "the evidence at trial was insufficient to prove either exclusion." *See* Joint Motion at 18. Specifically, Defendants claim that the government failed to prove that AUO or the individual defendants fixed the price of TFT-LCD panels "targeted" for sale or delivery to the United States, or that Defendants' conduct had a "direct, substantial and reasonably foreseeable" effect on United States import commerce. *See id.* at 18-23. But the jury

5

was instructed on both of the FTAIA exceptions and found beyond a reasonable doubt that the government's evidence sufficed.[3]

The Court does not find that the jury erred in its finding. To the contrary, the Court finds that, based on the evidence presented at trial, a reasonable jury could have found that the price-fixing conspiracy involved import commerce and that the conspiracy, which extended to the United States, had a "direct, substantial, and reasonably foreseeable effect" on that import commerce.

**3.     $500 Million Gross-Gain Finding**

The jury was also instructed to determine whether Defendants or other participants derived monetary or economic gain from the conspiracy:

> In determining the gross gain from the conspiracy, you should total the gross gains to the defendants and other participants in the conspiracy from affected sales of (1) TFT-LCD panels that were manufactured abroad and sold in the United States or for delivery to the United States; or (2) TFT-LCD panels incorporated into finished products such as notebook computers and desktop computer monitors that were sold in the United States or for delivery to the United States.

Final Jury Instructions at 15, Dkt. No. 829.

Based on these instructions and the testimony of the government's expert witness, Dr. Leffler, the jury found that the gross gain from the conspiracy was "$500 million or more." *See* Verdict at 3, Dkt. 851. Defendants argue that the jury's finding of gain from the conspiracy is unsupported by the evidence. Defendants challenge the analysis of Dr. Leffler, who testified that the gross gain from the conspiracy was "substantially greater than $500 million." According to Defendants, Dr. Leffler's analysis is flawed because he incorrectly assumed that every TFT-LCD panel made by the crystal-meeting defendants from 2001 to 2006 was affected by the conspiracy. Defendants claim that, because he failed to distinguish between affected and unaffected panels, Dr. Leffler's analysis does not meet the requirement in *Apprendi v. New Jersey*, 530 U.S. 466 (2000), that any fact increasing the penalty beyond

---

[3] Defendants also contend that the evidence was insufficient to meet the FTAIA exceptions as a matter of law. Defendants' interpretation of the FTAIA, however, is inconsistent with the case law upon which the jury instructions were based. Moreover, Defendants stipulated to part of those jury instructions and cannot be heard to complain about them now. *See* Stipulated and Party-Proposed Jury Instructions at 28, Dkt. No. 807 (parties agreeing that part B of the instructions "is a correct statement of the *Hartford Fire* requirements for establishing extraterritorial jurisdiction over foreign anticompetitive conduct, and should be given.").

the $100 million maximum prescribed by the Sherman Act must be proven beyond a reasonable doubt.

Defendants are incorrect. To begin with, Dr. Leffler's multiple regression analysis estimated total overcharges in excess of $2 billion, far more than $500 million. Defendants make no compelling argument as to why the jury's reliance on Dr. Leffler's analysis was unreasonable. Nor did they offer at trial any alternative assessment of gross gains earned by all six crystal-meeting companies. Further, Defendants' *Apprendi* argument is misguided because the jury was charged with finding the total gain from the conspiracy, not the proportion of the panels affected by it. As the government rightly observes, it is the former that increases the maximum fine; the jury found beyond a reasonable doubt that the gain was at least $500 million.

Neither acquittal nor a new trial is appropriate here, where there was sufficient evidence for a reasonable jury to determine a gross gain amount of $500 million.

## 4. Rule of Reason

Defendants revive an argument that the Court has already fully considered and rejected, *see* Order Denying Defendants' Motion to Dismiss the Indictment and For a Bill of Particulars, Dkt. No. 250; *United States v. Chen*, 2011 WL 332713 (N.D. Cal. 2011): that, pursuant to *Metro Industries Inc. v. Sammi Corporation*, 82 F.3d 839 (9th Cir. 1996), Sherman Act violations based on foreign conduct are subject to a rule-of-reason analysis, and do not constitute a *per se* violation of antitrust laws as alleged in the Indictment. The Court found then that the *Metro Industries* case was factually and legally distinguishable from this case, and reiterates that finding now.[4]

Defendants further contend they were not afforded fair notice under the due process clause that their conduct was forbidden. Defendants argue that *Metro Industries* is controlling Ninth Circuit law, and, as such, they only had fair warning that their conduct may be subject to a rule-of-reason analysis to determine whether there is a Sherman Act violation, not a *per se* analysis.

---

[4] The Court also finds that Defendants waived their *Metro Industries* argument by voluntarily abandoning their proposed rule-of-reason jury instructions and stipulating to the price-fixing instructions given to the jury. *See* Stipulated and Party Proposed Jury Instructions at 15, Dkt. 807; *see also United States v. Laurenti*, 611 F.3d 530, 543-44 (9th Cir. 2010) ("waiver occurs when the defendant was aware of the omitted element and yet relinquished his right to have it submitted to the jury") (internal citations and quotation omitted).

7

The Court is unpersuaded. "The due process clause . . . guarantees individuals the right to fair notice whether their conduct is prohibited by law." *United States v. AMC Entm't, Inc.*, 549 F.3d 760, 770 (9th Cir. 2008). There is ample evidence in the trial record that Defendants knew they were committing a wrongful act. "Indeed, since 'the punishment imposed is only for an act knowingly done with the purpose of doing that which [the Sherman Act] prohibits, the accused cannot be said to suffer from lack of warning or knowledge that the act which he does is a violation of the law.'" *United States v. Tannenbaum*, 934 F.2d 8, 12 (2d Cir. 1991) (quoting *Screws v. United States*, 325 U.S. 91, 102 (1945)).

**5.    AUOA's Separate Claims**

Defendants also argue that the Court should grant their motions in favor of AUOA because the government failed to prove that "any agent of AUOA knowingly and intentionally participated in the price-fixing agreement." Joint Motion at 55.

The Court disagrees. Viewed in a light most favorable to the government, the Court finds that there is considerable evidence in the record from which a jury could reasonably find beyond a reasonable doubt that Hui Hsiung (AUO), Michael Wong (AUOA), and other AUOA employees participated in the conspiracy on behalf of AUOA and reached illegal pricing agreements.

## CONCLUSION

For the foregoing reasons and for good cause shown, the Court hereby DENIES Defendants' motions for acquittal and DENIES Defendants' alternate motions for a new trial. Dkt. Nos. 878 and 879.

**IT IS SO ORDERED.**

Dated: June 11, 2012

SUSAN ILLSTON
United States District Judge

8